22-622-cv; 22-692-cv
*Roberts v. Bassett*; *Jacobson v. Bassett*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of November, two thousand twenty-two.

PRESENT:  JOSÉ A. CABRANES,
          GERARD E. LYNCH,
          BETH ROBINSON,
                    *Circuit Judges.*

_____

JONATHAN ROBERTS and CHARLES VAVRUSKA,

    *Plaintiffs-Appellants,*        22-622-cv

    v.

MARY T. BASSETT, in her official capacity as Commissioner, New York State Department of Health, DEPARTMENT OF HEALTH AND MENTAL HYGIENE OF THE CITY OF NEW YORK,

    *Defendants-Appellees.*

_____

**FOR PLAINTIFFS-APPELLANTS:**   WENCONG FA (Caleb R. Trotter, Anastasia Boden, *on the brief*), Pacific Legal Foundation, Sacramento, CA.

**FOR DEFENDANTS-APPELLEES:**   ANDREA W. TRENTO, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, Deputy Solicitor General, *on the brief*), *for* Letitia

1

James, New York State Attorney General, New York, NY.

DIANA LAWLESS, of Counsel (Richard Dearing, MacKenzie Fillow, of Counsel, *on the brief*), *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

WILLIAM A. JACOBSON, on behalf of himself and others similarly situated,

*Plaintiff-Appellant,*

v.

MARY T. BASSETT, in her official capacity as Acting Commissioner of the New York Department of Health,

*Defendant-Appellee.*

22-692-cv

**FOR PLAINTIFF-APPELLANT:**

JEFFREY M. HARRIS (J. Michael Connolly, *on the brief*), Consovoy McCarthy PLLC, Arlington, VA; Jonathan F. Mitchell, Mitchell Law PLLC, Austin, TX.

**FOR DEFENDANTS-APPELLEES:**

BEEZLY J. KIERNAN, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia James, New York State Attorney General, Albany, NY.

Appeals from a March 15, 2022 order of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) and an April 1, 2022 judgment of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the District Courts be and hereby are **AFFIRMED**.

Plaintiffs Jonathan Roberts and Charles Vavruska sued the Commissioner of the New York State Department of Health ("State Defendant") and the New York City Department of Health and Mental Hygiene ("City Defendant"), alleging that Defendants' guidance on how to prioritize patients

eligible for specified new COVID-19 treatments violates the Fourteenth Amendment. Plaintiff William A. Jacobson alleges the same of State Defendant's guidance and, further, that it violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and Title I of the Affordable Care Act, 42 U.S.C. § 18116. The District Courts dismissed both cases for lack of standing. Plaintiffs appeal. We assume the parties' familiarity with the underlying facts, the procedural history of the cases, and the issues on appeal.

## I. Background

In late 2021, the U.S. Food and Drug Administration ("FDA") authorized several new COVID-19 treatments for high-risk patients: a monoclonal antibody product, Sotrovimab, and two antiviral therapies, Paxlovid and Molnupiravir. These medications, the latter two of which must be taken within five days of symptom onset, were initially and briefly in short supply.

Soon after the FDA's authorizations, State Defendant published "guidance" instructing health-care providers on how to prioritize patients eligible for the new treatments during the supply shortage. It directed providers to assign patients to one of five descending risk groups depending on their vaccination status, age, and risk factors for severe COVID-19. Generally, patients with more risk factors were to be placed in a higher priority risk group and to receive priority within their respective risk groups. The guidance noted that "[n]on-white race or Hispanic/Latino ethnicity should be considered a risk factor." 22-692 J.A. 29–31. City Defendant issued and distributed to 75,000 email addresses an "advisory" instructing providers to follow State Defendant's guidance while a supply shortage persisted. Plaintiffs, who are white and not of Hispanic/Latino ethnicity, did not contract COVID-19 while the shortage continued and the guidance remained operative.

Plaintiffs allege three injuries. First, they allege that the guidance denies them equal access to the new COVID-19 treatments. Second, they contend that it increases their risk of severe illness. Third, Plaintiff Jacobson argues that it harms him emotionally because the denial of automatic eligibility for treatment due to his race and ethnicity causes him heightened concern. Each alleged injury requires its own standing analysis, and we address each in turn.

## II. Alleged Denial of Equal Access to Treatment

To establish constitutional standing, a plaintiff must demonstrate an (1) injury in fact that is (a) concrete and particularized and (b) actual or imminent, (2) fairly traceable to the challenged action of the defendant, and (3) likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). We review *de novo* a district court's decision to grant a motion to dismiss for lack of standing. *See Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 191 (2d Cir. 2014). And "we 'accept [ ] all well-pleaded allegations in the complaint as true [and] draw [ ] all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Bigio v. CocaCola Co.*, 675 F.3d 163, 169 (2d Cir. 2012)).

Upon review of the records, we conclude that Plaintiffs lack standing based on their alleged denial of equal access to treatment because they have not demonstrated an imminent injury in fact. When the government "erects a barrier . . . mak[ing] it more difficult for members of one group to obtain a benefit than [another]," the "injury in fact . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). We have identified three elements necessary for standing under *Northeastern Florida Chapter*: "that (1) there exists a reasonable likelihood that the plaintiff is in the disadvantaged group, (2) there exists a government-erected barrier, and (3) the barrier causes members of one group to be treated differently from members of the other group." *Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994).

We assume *arguendo* that Plaintiffs have met their burden under *Comer*. But satisfying *Comer* does not mean Plaintiffs have demonstrated *all* that is required to establish an injury in fact. *Comer* helps define the contours of an injury in fact in the equal protection context. It does not, however, eliminate the requirement that the injury be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); *see also MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 47 (2d Cir. 2017).

Plaintiffs fail to satisfy the requirement that an injury in fact be actual or imminent. They suffered no actual injury because a provider neither delayed nor denied their COVID-19 treatment because of the guidance, which operated during the supply shortage. Their alleged denial of equal access to treatment, then, must be imminent. Imminent injuries cannot be "too speculative." *Lujan*, 504 U.S. at 564 n.2. And although "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013)), "a highly attenuated chain of possibilities[ ] does not satisfy the requirement that [a] threatened injury must be certainly impending," *Clapper*, 568 U.S. at 410.

A highly attenuated chain of possibilities is precisely what we have here. Plaintiffs must (1) test positive for COVID-19 (2) while there is a shortage of treatments specified by the guidance, (3) experience mild to moderate symptoms, (4) seek treatment, (5) within the appropriate time of symptom onset, (6) from a health-care provider (7) who adheres to the guidance and (8) resultingly declines or delays a specified treatment (9) because of Plaintiffs' race or ethnicity. The alleged injury in fact is not impending let alone "certainly impending," especially given the undisputed widespread availability of the specified treatments. *Clapper*, 568 U.S. at 410. Plaintiffs therefore lack standing to challenge the guidance they allege denies them equal access to treatment.

## III. Alleged Increased Risk of Suffering Severe Illness

Plaintiffs also fail to demonstrate an injury in fact based on their alleged increased risk of severe COVID-19 because of the guidance. Plaintiffs rely primarily on *Baur v. Veneman*, which held

4

that "exposure to an enhanced risk of disease transmission may qualify as injury-in-fact in consumer food and drug safety suits." 352 F.3d 625, 628 (2d Cir. 2003). We assume *arguendo* that *Baur* extends beyond such suits.[1]

The *Baur* plaintiffs faced an actual, increased risk of mad cow disease because they were exposed to potentially unsafe meat in the food supply. 352 F.3d at 640. Here, Plaintiffs would face an actual, increased risk of severe COVID-19 only once a provider denied or delayed treatment because of the guidance. No provider delayed or denied treatment, so the alleged *Baur* injury, if one exists, must be imminent.

An imminent *Baur* injury may arise when a plaintiff is imminently exposed to "a sufficiently serious [enhanced] risk of medical harm." *Id.* at 641. But to be imminently exposed to an enhanced risk of severe COVID-19, the attenuated chain of events listed above must occur. Because Plaintiffs cannot rely on an attenuated chain of possibilities to demonstrate an injury in fact, they again fail to establish standing.

## IV.     Plaintiff Jacobson's Alleged Emotional Injury

Plaintiff Jacobson further fails to establish standing based on his alleged emotional harm because it is not traceable to the guidance. To establish standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). Jacobson alleges that he experiences heightened daily concern because he is not automatically eligible for treatment solely because of his race and ethnicity. But the reason Jacobson, as a white, non-Hispanic/Latino man, lacks automatic eligibility for treatment is that the FDA—as informed by the Centers for Disease Control and Prevention—does not consider him a high-risk patient. In other words, it is the FDA's authorization, not State Defendant's guidance, that precludes his automatic eligibility on the basis of race and ethnicity. Absent traceability, Jacobson's alleged emotional injury is insufficient to establish standing.

---

[1] Like *Baur*, these cases involve probabilistic harm in a public health context. We have demonstrated a willingness to extend *Baur* to a non-consumer food and drug safety suit, but only in a non-precedential order. *See United States v. Evseroff*, 528 Fed. App'x 75, 77 (2d Cir. 2013) (summary order). Yet the cases before us do not present a "tight connection between the type of injury . . . allege[d] and the fundamental goals of the statutes" sued under—a factor that reinforced the *Baur* Court's conclusion that the plaintiff had alleged a cognizable injury. 352 F.3d at 635. For that reason, *Baur* does not determine the outcome here, even if that case extends beyond the food-and-drug context. Accordingly, we need not address the scope of the *Baur* holding here.

**CONCLUSION**

We hold that Plaintiffs fail to establish standing to challenge State and City Defendants' December 2021 guidance on how to prioritize patients for specified COVID-19 treatments during a supply shortage. They fail to demonstrate an imminent injury in fact regarding their alleged denial of equal treatment and increased risk of severe illness. And Plaintiff Jacobson fails to demonstrate that his alleged emotional injury is traceable to the challenged guidance.

In reaching our conclusion, we emphasize that we have not considered the merits of Plaintiffs' appeals.[2]

In sum, we have reviewed all of the arguments raised by Plaintiffs Roberts, Vavruska, and Jacobson on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the March 15, 2022 order of the U.S. District Court for the Eastern District of New York and the April 1, 2022 judgment of the U.S. District Court for the Northern District of New York.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] Judge Cabranes joins the judgment of the Court in full, but takes this opportunity to state his personal view: government "guidance" effectively directing health-care providers to prioritize the treatment of patients based on race or ethnicity may indeed present portentous legal issues if challenged by plaintiffs with standing.